UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  19-cv-25113-BLOOM/Louis

CHARLENA MINUS,

    Plaintiff,

v.

MIAMI-DADE COUNTY,

    <u>    Defendant    </u>/

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Miami-Dade County (the "County") moves for Summary Judgment on Plaintiff Charlena Minus' six-count Amended Complaint alleging that her February 2018 dismissal as a Rail Traffic Controller violated the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 and the Florida Civil Rights Act ("FCRA").  As a Rail Traffic Controller, Minus performs safety sensitive duties that Plaintiff described in her words as follows: "people's lives are in your hands."

All six counts of the Amended Complaint are premised on the same facts and adopt the allegations in paragraphs 1-25 of the Amended Complaint.  Count I is a disparate treatment ADA discrimination claim.  Count II is an ADA claim for failure to accommodate.  Count III is an ADA retaliation claim.  Counts IV, V and VI are FCRA claims identical to the ADA claims in Counts I, II and III, respectively.

**The Plaintiff Is Estopped From Claiming That She Is A Qualified Individual Having Verified In Her FRS Disability Retirement Application That She Is Permanently Incapacitated From Performing *Any* Work**

Minus applied for in-line-of-duty disability retirement through the Florida Retirement System (FRS). Two physicians certified that Minus was permanently incapacitated from performing *any* work.  In addition, Minus verified in the presence of a notary that her disability "incapacitates me for the performance of any useful work."  Minus also applied for disability retirement with the Social Security Administration (SSA) where she affirmed that she could not perform the essential duties of a Rail Traffic Controller.  Having successfully maintained that she was unable to do her past relevant work due to her disability, Minus is estopped from asserting in this action that she was able to perform the essential functions of a Rail Traffic Controller ("RTC").

*Kurzweg v. SCP Distribitors, LLC*., 424 Fed. App'x 840, 844 (11th Cir. 2011) ("[Plaintiff] maintained before the SSA that he was unable to do his past relevant work … due to his disability. Therefore, [Plaintiff] is estopped from asserting in this ADA action that he was able to perform the essential functions of his job … when [Defendant] terminated him."). Accordingly, summary judgment should be granted on all counts because Minus cannot show that she is a qualified individual under the ADA.

Moreover, even if Minus were not precluded as matter of law from claiming to be a qualified individual by virtue of her successful disability application to FRS and SSA, there is no genuine factual dispute that she was not, in fact, capable of performing the essential functions of a RTC with or without a reasonable accommodation. The undisputed record from her physicians establishes that Minus was totally disabled and unable to work at the time of her termination in March 2018. Accordingly, as a matter of law, Minus is not a qualified individual and cannot establish a *prima facie* case under the ADA. *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005) ("Because the ADA reserves its protections for individuals still able to perform the essential job functions of a job, albeit perhaps with reasonable accommodations, a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination thereunder."). Thus, summary judgment should be granted on all Counts.

### The County Provided Minus With A Reasonable Accommodation

Even if Minus were a qualified individual under the ADA, the County satisfied its obligations to provide her with a reasonable accommodation. Here, the County held Minus' position open for one-and-a-half years, during which Minus continued to receive County health insurance benefits. This accommodation was reasonable because it enabled Minus to return to work if she recovered and a doctor permitted her to do so. Unfortunately, Minus' doctors never cleared her to return to work full duty and perform the essential functions of an RTC. This accommodation extinguished any possible obligation to accommodate under the ADA and Plaintiff was not entitled to insist on alternative accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc*., (11th Cir. 1997) ("Stated plainly, under the ADA, a qualified individual is not entitled to the accommodation of her choice, but only to a reasonable accommodation."). Accordingly, the County is entitled to summary judgment as to Counts I, II, IV and V.

### Counts III And VI Are Duplicate And Must Be Dismissed

Counts III and VI must be dismissed as a matter of law because they are improper attempts

to "repackage" the ADA discrimination claims in Counts I and IV. *Williams-Evans v. Advanced Auto Parts, Inc.*, 2020 WL 501752, *6 (S.D. Ga. June 30, 2020) (granting summary judgment because the ADA considers a failure to accommodate as a claim for discrimination and not retaliation.).

**Minus Was Dismissed For Legitimate Non-Discriminatory Non-Retaliatory Reasons**

The County terminated Minus because she was absent for over a year and had not been released to work full duty by her doctor. The County's reasons for dismissing Minus were tested in a civil service evidentiary hearing before a neutral and upheld. *Frazier-White v.* Gee, 818 F.3d 1249, 1258 (11th Cir. 2016) (affirming summary judgment because "Plaintiff was terminated solely as a result of her inability to return to full duty …"). Thus, the County is entitled to summary judgment as to all counts.

## I. BACKGROUND

Minus was employed as an RTC on the Metromover third shift from 10 p.m. to 6 a.m., commonly referred to as the "overnight shift." Def.'s S.M.F. ¶ 6. On the overnight shift, Minus would usually work with another RTC. *Id*. On occasion, Minus worked by herself. *Id*.

**RTC Is A Safety Sensitive Position**

RTC is a safety sensitive position. *Id*. ¶ 7. RTCs perform safety sensitive functions and are subject to Federal Transportation Association (FTA) regulations. *Id*. RTCs must "control, direct, monitor and coordinate movement of passenger trains, work trains, test trains … on the Metrorail and Metromover mainline ensuring the safety of passengers and employees." *Id.* Specifically, RTCs must have the "ability to operate all equipment in the Central Control Facility" and "react promptly … under emergency conditions." *Id*.

According to Minus, RTCs perform safety sensitive work because "(y)ou have people's lives in your hand and you [are] dealing with power." *Id.* ¶ 9. To turn off or restore electrical power at the Metromover console, an RTC must move quickly from one console to another console. To move quickly from console to console, Minus would "slide in the chair and sometimes would, get up and go over there." *Id*. To perform RTC duties, Minus must sit, stand, bend and climb. The RTC position is not a sedentary position. *Id.* ¶ 10.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

3

**Plaintiff Suffered An On-The-Job Injury In August 2016**

On August 20, 2016, Minus fell at work and injured her knees, elbows, wrists, shoulders, back and stomach. Minus tore her rotator cuffs on both shoulders. *Id*. She cannot bend, squat, kneel and cannot stand or sit for long periods of time. *Id*. ¶ 34. Minus' injuries caused her 'to walk with the help of a walker" and her dominant right hand is in a sling. *Id*. ¶ 13. As a result, Minus was absent and on December 7, 2016, Minus' submitted a doctor's note placing her on a "no work status until further notice." *Id*. ¶ 16.

**Minus Returns To Work With A Sedentary Only Work Restriction**

Nearly a year after her fall, on August 7, 2017, Minus arrived at work and told her supervisor, General Superintendent Gregory Robinson, that she was in pain and had to leave to a doctor's appointment. *Id*. ¶ 19. Minus then handed superintendent Robinson a doctor's note placing Minus on a sedentary only work restriction. *Id*. Superintendent Robinson determined that due the sedentary work only restriction and because Minus was in pain, minus could not perform RTC essential job functions. *Id*. ¶ 20. Minus acknowledges that on August 7, 2017 she "could not perform her job duties.'' *Id*. ¶ 38.

**There Is No Light Duty Position Available For Minus**

The next day, on August 7, 2017, Superintendent Robinson conferred with Light Duty Coordinator Mike Viera in an attempt to place Minus in a light duty position. *Id*. ¶ 21. Unfortunately, there were no available light position and Minus was placed on a waiting list. *Id*.

**Minus Receives A Disciplinary Action Report**

Consistent with the LTA Policy's requirement concerning employees that are absent for over one year, on August 9, 2017, Minus received a Disciplinary Action Report ("DAR") setting forth that Minus violated of the County's Personnel Rules. *Id*. ¶ 22. The DAR stated that "Minus has been absent from her regular duties since August 2016. Additionally, available medical information does not indicate when RTC Minus will be able to return to the duties of her classification." *Id*.

**Dr. Tannenbaum Finds That Minus Cannot Work Light Duty**

In September 2017, Minus' physical condition deteriorated when she dislocated her right shoulder while getting off an exercise bicycle during physical therapy. *Id*. ¶ 23. On October 7, 2017, Dr. Scott Tannenbaum reviewed Minus' physical therapy progress notes which describe "[Minus] complaining of quite a bit of pain … They note diminution overall in her gross strength,

range of motion of both shoulders, and in her lumbar region." *Id*. Dr. Tannenbaum concluded that Minus may be placed "in a light duty capacity but without her dominant right upper extremity, *it would be difficult for her to do any light duty at all*." *Id.* (emphasis added). One month later, on November 6, 2017, Minus reached maximum medical improvement. *Id*. ¶¶ 23, 30.

**Minus Files For Disability Retirement With Social Security**

On December 1, 2017, Minus submitted her application for Supplemental Security Income (SSI) with the Social Security Administration (SSA) stating that she was *permanently and totally disabled*. *Id*. ¶ 24. In this application, Minus affirmed that she was not able to perform her normal RTC duties "which included de-energizing power if someone fell on the tracks:"

> 10. What were you able to do before your illness, injuries or conditions that you can't do now?
>
> My normal work duties which included de-energizing power if someone fell on the tracks (train), moving at a fast pace, switching trains to correct tracks for travel, working with field personnel changing bulbs which indicates where a train is or should be, safety sensitive functions, reach overhead.

*Id*. Minus also indicated that "standing and sitting is limited/restricted to approx. 15 minutes at a time." *Id*. Finally, Minus was currently taking medications that made her drowsy and lightheaded.

**Minus Meets with ADA Coordinator on February 6, 2018**

On February 6, 2018, Minus met with ADA Unit Coordinator Marcos Ortega. Even though Minus was advised on four occasions from 2016 through 2017, in writing to contact ADA Coordinator Ortega, Minus waited until February 6, 2018 to meet with ADA Coordinator Ortega because "[she] was trying to get better." *Id*. ¶ 25. At this meeting, Minus completed a Reasonable Accommodation Request Form. In this Form,[1] Minus stated that her impairment affected her ability to do her job in that she was unable to move "fast between consoles." *Id*. As a reasonable accommodation, Minus requested a light duty assignment or job restructuring. *Id*.

**Minus Meets with Director Bravo**

On February 9, 2018, Minus met with DTPW Director Alice Bravo to respond to the charges in the DAR. Minus was represented by attorney Javier Basnuevo. *Id*. ¶ 26. During this

---

[1] Minus signed the Reasonable Accommodation Request Form and affirmed that "(t)he information provided by me is true and correct to the best of my knowledge." *Id*.

meeting, Mr. Basnuevo requested a light duty assignment for Minus. *Id*. Minus did not present any evidence that she was ready, willing and able to report to and perform her RTC assignment.  *Id*.

**ADA Coordinator Ortega Determined That There Are No Vacant Positions for Minus**

On February 15, 2018, in an attempt to reassign Minus, Ortega reviewed the DTPW list of vacant positions which included:  Traffic Analyst Automotive Equipment Operator, Light Duty Technician, Senior Professional Engineer, Engineer Manager, and Traffic Engineering Division. Ortega found that Minus did not qualify for these positions. *Id*. ¶ 27.

On February 21, 2008, Ortega informed Minus that "[a]fter evaluating the medical information submitted with your request for accommodation and medical opinion regarding your abilities to perform the essential job functions [EJF's] … there is no accommodation that would assist you to perform the EJF's of your current position." *Id*. ¶ 28. Ortega then placed Minus on a waiting list for reassignment.  *Id*.

**Minus's FRS Disability Retirement Application**

On February 25, 2018, Minus verified in her Florida Retirement System (FRS) line-of-duty disability retirement application that "[t]his application is being made because of a disability, ***which incapacitates me for the performance of any useful work*** …" ). (emphasis added). *Id*. ¶ 25. Additionally, Minus affirmed that, "***as a disabled retiree, I cannot work in any capacity …***" *Id*. Minus also listed the medical conditions[2] that prevented her from performing her usual job duties.

**Dr. Braver Declares That Minus Is Permanently Incapable of Any Kind of Work**

Minus submitted two physician reports in support of her FRS disability retirement application. *Id*.  Dr. Beth Braver's Physician's Report of February 15, 2018 concluded that Minus was "***permanently incapable of any kind of work; totally and permanently disabled from gainful employment***." *Id*. ¶¶ 29, 30.  Additionally, Dr. Braver indicated that Minus's disability was a result of the on the job injury that she suffered on August 20, 2016 and that Minus "has not been

---

[2] Minus listed the following medical issues which prevented her from performing her usual job duties: "(MMI reached 11-6-17). The work related fall (8-20-16) caused both shoulders to have torn rotator cuffs, cervical sprain & strain, lumbar sprain and strain, blood pressure issues, soft tissue overlay, neuropathy, back issues, dislocation of right shoulder, issues with both knees, both elbows and arms, hand issues, ankle and feet issues, limited/restricted lifting and ambulation …" *Id*. ¶ 29.

functioning since her injury and that she reached maximum medical improvement on November 11, 2017." *Id*. ¶ 30.

**Dr. Tannenbaum Declares That Minus Is Permanently Incapable of Any Kind of Work**

Similarly, Dr. Tannenbaum's Physician's Report of February 26, 2018, concluded that Minus's physical impairment consisted of a "severe limitation of functional capacity**, *permanently incapable of any kind of work, totally and permanently disabled from gainful employment***." *Id*. ¶ 31.

**Director Bravo Terminates Minus**

On March 13, 2018, Director Bravo terminated Minus for violating the Miami-Dade County Personnel Rules as set forth in the DAR. *Id*. ¶ 32.  On March 16, 2018, Minus appealed Director Bravo's decision pursuant to § 2-47 of the Miami Dade County Code. Id. While her civil service appeal hearing was pending on March 22, 2018, Minus submitted her FRS disability application. *Id*. ¶ 33.

**Minus Receives Disability Retirement Benefits**

On May 8, 2018, SSA approved Minus's application for SSI benefits and found that Minus was disabled as of August 20, 2016. *Id*. ¶ 35.  SSA awarded Minus a lifetime monthly benefit payment of $2,440.00.  *Id*.  On May 24, 2018, FRS approved Minus's application for in-line-of-duty disability retirement and awarded her a lifetime monthly benefit of $6,302.11. *Id*. ¶ 36.

**Hearing Examiner Vura Finds That DTPW Properly Terminated Minus**

On October 17, 2018, Hearing Examiner Richard Vura ("HE Vura") issued his Recommendation and concluded that Director Bravo had just cause to dismiss Minus. *Id*. ¶ 37. HE Vura found that Minus did not seek alternate County employment even though she had the necessary information to apply for County jobs. *Id*.  Additionally, HE Vura found that Minus did not contact ADA Coordinator Ortega until early February 2018, even though "(t)he [S/B] package encourages employees to contact the ADA Coordinator to review what accommodations can be made for them." *Id*.  Ultimately, HE Vura concluded that "(t)he County provided Ms. Minus with comprehensive assistance programs in an attempt to aid her possible return to work in some other classification." *Id*.

On November 9, 2018, Mayor Carlos Gimenez considered the HE's Recommendation and sustained Director Bravo's decision to dismiss Minus. ¶ 38.

## II. DISCUSSION

### A. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT SHOW THAT SHE IS A *QUALIFIED INDIVIDUAL* UNDER THE ADA

As an initial matter, Minus' attempt through this lawsuit, essentially to double dip and recover both backpay wages and disability[3] payments at the same time, is precluded by Eleventh Circuit precedent. Accordingly, summary judgment should be granted as to all counts.

"The ADA is not an affirmative action statute." *United States Equal Employment Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1346 (11th Cir. 2016) (cleaned up). In enacting the ADA, Congress did not intend to grant preferential treatment to disabled workers. *Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998). This is because the ADA only protects "qualified individuals" with disabilities, whom the Act defines as individuals who "***can*** perform the essential functions of the employment positions that such individual holds or desires," with or without a reasonable accommodation. 42 U.S.C. §12111(8) (emphasis added).

The ADA makes it unlawful to discriminate against a "qualified individual" by "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified employee." 42 U.S.C. § 12112(a),(b)(5)(A). "An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job." *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795, 806 (1999)

In *Cleveland*, the Supreme Court explained that when an employee claims that she is "unable to work" it will "negate an essential element of her ADA case" and create a presumption that the plaintiff is estopped from asserting that she is a qualified individual (i.e., one who is able to work with or without a reasonable accommodation) under the ADA. *Id.* at 806. Similarly, the Eleventh Circuit has held that "[b]ecause the ADA reserves its protections for individuals still able to perform the essential functions of a job, albeit perhaps with reasonable accommodation, ***a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination thereunder***." *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005)

---

[3] Minus receives a FRS lifetime monthly benefit of $6,302.11, and a SSA monthly benefit of $2,440.00, totaling $8,742.11 in lifetime monthly disability retirement benefits. Def.'s S.M.F. ¶¶ 35, 36.

(emphasis added); *see also* 42 U.S.C. §§ 12112(a), 12117(a), 12111(8).

Unlike Social Security, the Florida Retirement System (FRS) **only** provides disability benefits to individuals who retire because they are "totally and permanently disabled," meaning that they are medically precluded "from rendering useful and efficient service as an officer or employee." Fla. Stat. § 121.091(4)(b). Before approving any disability application, the applicant must provide certification of "*total and permanent disability* by two licensed physicians . . . who have evaluated the applicant for employment." *Id.* § 121.091(4)(c)1 (emphasis added). It must also be documented that the applicant "was totally and permanently disabled *at the time he or she terminated covered employment*." *Id.* § 121.091(4)(c)2.b (emphasis added). Florida law further imposes upon a party receiving disability benefits the obligation to notify the FRS is they are reemployed and benefits are discontinued if it is found that the individual "is no longer disabled." *Id.* §§ 121.091(4)(h)1, (4)(h)2.

Minus completed her application for FRS Disability Retirement in February 2018. Def.'s S.M.F. ¶ 29. The application was sworn under oath before a notary public. *Id.* In the application, Minus swore that she was applying for benefits "because of disability, which incapacitates me from the performance of *any useful work*." *Id.* (emphasis added). Minus further swore that "I understand, as a disabled retiree, I cannot work in any capacity and receive a disability benefit." *Id.* In addition, Minus submitted medical certifications from two doctors, both of whom certified that in February 2018 she was **permanently incapable of any kind of work** and **totally and permanently disabled from gainful employment**. *Id.*

Minus' application for FRS disability retirement benefits and supporting medical certification lay bare that she was physically unable to work and do not leave open even the *possibility* of a viable ADA claim. FRS disability benefits require the applicant to demonstrate not only that she has a permanent disability but also that she is permanently incapable of doing any work, which Minus successfully demonstrated to FRS. Minus' application for FRS retirement disability included not only her own notarized statement that she could not perform *any useful work* but also two certifications from her own treating doctors that she was *permanently incapable of any kind of work*. *Id*.

The Eleventh Circuit's decision in *Slomcenski* precludes Minus from claiming she is a qualified individual here and compels summary judgment on this threshold issue. In *Slomcenski*, the Court of Appeals found that the plaintiff could not be a qualified individual under the ADA

because her receipt of longer term disability "benefits was premised on her representation that she was unable to perform every occupation for which she was qualified or could become qualified." 432 F.3d at 1281. Minus' representations to SSA in February 2018 are fatal to her claim that she can perform the duties of an RTC. Similarly, Minus' representation to FRS at or around the time of her March 2018 termination were similarly unequivocal – she could do no work of any kind. In accordance with Florida law, Minus' FRS Disability Benefits were premised on her assertion that she was unable to work *at all*.

The Court should therefore determine that Minus'[4] successful receipt of FRS benefits based on representation of a total permanent disability that precluded her "from rendering useful and efficient service as an officer or employee," Fla. Stat. § 121.091(4)(b), estops or precludes Minus from asserting that she is a qualified individual within the meaning of the ADA. The County is entitled to final summary judgment on this basis alone. *Slomcenski*, 432 F.3d at 1281; *accord Kurzweg v. SCP Distributors, LLC*, 424 F. App'x 840, 844 (11th Cir. 2011). *See Opsteen v. Keller Structures, Inc.*, 408 F.3d 290, 392 (7th Cir. 2005) ("[A] person who applied for disability benefit must live with the factual representations made to obtain them, and if these show inability to do the job then an ADA claim may be rejected without further inquiry.").

Simply put, Minus cannot have it both ways. She cannot receive almost $100,000 in disability payments based on the representations she made to FRS and SSA that she is disabled and incapacitated from performing any work and simultaneously seek backpay and reinstatement from the County because she is somehow claiming that she is simultaneously able to perform RTC *safety sensitive* duties. Minus cannot derive an unfair windfall from these inconsistent positions. Accordingly, summary judgment should be granted as to all Counts in the Amended Complaint.

### B. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNTS I AND IV BECAUSE, EVEN IF PLAINTIFF WERE A QUALIFIED INDIVIDUAL, SHE CANNOT ESTABLISH A *PRIMA FACIE* CASE UNDER THE ADA

Because there is no genuine dispute of material fact and the County is entitled to judgment as a matter of law that Minus was not a qualified individual under the ADA, the Court need not reach the issue of whether Minus can establish a *prima* facie case of disparate treatment under the

---

[4] Claims brought under the FCRA, the ADA are analyzed by using the same framework as claims under the ADA. *Morgan v. The CEO Group, Inc.*, 2020 WL 948466, *15 (S.D. Fla. Feb. 5, 2020).

ADA. If the Court does reach the issue, however, summary judgment is independently warranted on this basis as to Counts I and IV because plaintiff cannot show that similarly situated non-disabled employees were treated better; 2) Plaintiff was not terminated because of her disability; and 3) the County did not fail to provide Minus with a reasonable accommodation under the ADA.

### 1. Minus Cannot Establish A *Prima Facie* Case Because Comparators Are Not Similarly Situated

To assess whether an employer has discriminated against an employee in violation of the ADA, federal courts use the same burden-shifting analysis that applies under Title VII of the Civil Rights Act. *See Holly v. Clairson Indus, L.L.C*., 492 F.3d 1247, 1255 (11th Cir. 2007) (applying Title VII's burden-shifting framework to ADA claims). If an employee makes a *prima facie* showing of discrimination, the employer must then articulate a "legitimate, non-discriminatory reason for the challenged action." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). If the employer manages to provide such a reason, the employer must adduce enough evidence to show that the employer's stated reason is pretextual. (*Id*. at 1243).

"To establish a *prima facie* case for disability discrimination, a plaintiff must produce sufficient evidence to permit a jury to find that she: (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Morgan v. the Leo Group, Inc*., 2020 WL 948466, *14 (S.D. Fla. Feb. 5, 2000).

Apparently, Minus alleges that other RTCs[5] that were injured and were not terminated. These comparators, however, are not similarly situated in all material respects. *Lewis c. City of Union, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (comparators must be similarly situated in all material respects). There is no evidence that the RTCs identified by Minus, 1) were absent for a year and placed on no-work status; 2) then placed on a sedentary-work only restriction; 3) had two doctors certify that they were permanently incapacitated from performing any work; and 4) admit that they were unable to perform their job duties. Unlike Minus, who admits in her EEOC charge and her Amended Complaint ¶ 21 that she could not perform her job duties, these RTCs were capable of performing their full duties, and it is precisely because of that capability that they were not similarly situated. (*See* Def.'s S.M.F. 34; G. Robinson Dep. pp. 126-127). Accordingly,

---

[5] Minus lists RTCs Andrea Apaizo, Tracy Freager, Betty Nelson, Ed Coughran and Darrel Moses as comparators. Minus Dep. p. 113.

these RTCs are not similarly situated and plaintiff cannot establish a *prima facie* case of ADA disparate treatment. *Wolfe v. Postmaster General*, 488 Fed. Appx. 465-69 (11th Cir. 2012) (affirming summary judgment in ADA case because alleged non-disabled comparators are not similarly situated). Thus, Minus has not established a *prima facie* case of disparate treatment ADA discrimination as to Counts I and V.

### 2. Plaintiff Cannot Establish Causation Between Superintendent Robinson's Alleged Bias And Her Termination

In a disparate treatment ADA case, Minus must show that the alleged discriminatory bias was the reason for her termination. *Raytheon Co. v. Hernandez*, 540 U.S. 442, 522 (2003). Here, Minus alleges that Superintendent Robinson is the person who discriminated against her and recommended that she be terminated. Ex. 4; Minus Dep. p. 129. Minus failed to provide any evidence of anti-disability bias. *Id.* p. 128-129. Even if Superintendent Robinson was alleged to be biased, however, any such alleged bias did not factor into Director Bravo's decision to terminate her. Director Bravo conducted her own investigation where Minus, through her attorney, had an opportunity to tell her side of the story. Def.'s S.M.F. ¶ 26. Beyond that, Minus appealed her dismissal before an independent hearing examiner where she had the opportunity to cross-examine witnesses and introduce evidence. Def.'s S.M.F. ¶ 37. Director Bravo's independent investigation of the allegations that led to Minus' termination, as well as the additional independent review conducted by Hearing Examiner Vura, forecloses any suggestion that Minus' termination was a result of Superintendent Robinson's alleged unlawful influence. *Dwyer v. Ethan Allen Retail, Inc.*, 325 Fed. Appx. 755 (11th Cir. 2009) (affirming summary judgment in ADA disparate treatment case because plaintiff did not make a *prima facie* case of discrimination). *See Anterio v. City of High Springs*, 762 Fed. Appx. 891, 892 (11th Cir. 2019) ("If, however, a decision maker conducts its own evaluation and makes an independent decision, the decision is free of the taint of biased subordinate employee.") No reasonable jury could find on these facts that Director Bravo's decision to terminate Minus was a result of Superintendent Robinson's alleged bias. Accordingly, Minus cannot establish causation and the County's Motion for Summary Judgment should be granted as to Counts I and IV.

### C. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MINUS WAS TERMINATED FOR LEGITIMATE REASONS UNRELATED TO HER DISABILITY

#### 1. Plaintiff Was Terminated For Legitimate Reasons Unrelated To Her Disability

Minus was terminated because she violated the County's Personnel Rules in that she was absent for over a year and was not cleared to return to work full duty by her doctors. Def.'s S.M.F. ¶¶ 22, 32 and 37. This is consistent with the LTA policy requirement that employees who are absent for more than a year must be separated. The County's reasons for terminating Minus were set forth in detail in the DAR, and were reviewed by Director Bravo. Def.'s S.M.F. ¶¶ 22, 32. Director Bravo's decision was then reviewed by Hearing Examiner Vura. *Id.* ¶ 37.

After conducting an evidentiary hearing, Hearing Examiner Vura concluded that termination was appropriate discipline under these facts Minus cannot show that the County's reason for terminating her were a pretext for retaliation. *Lyons v. Miami-Dade County*, 791 F. sup. 2d 1221 (S.D. Fla. June 3, 2011) ("Lyons has failed to demonstrate or show that any evidence explaining how the County's reasons for termination should in anyway be construed as pretextual. Moreover, as part of Lyon's civil service hearing, the hearing examiner concluded that dismissal was appropriate discipline.") aff'd 470 Fed. Appx. 861 (11th Cir. 2012).

### D. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT AS TO THE REASONABLE ACCOMMODATION CLAIMS IN COUNTS II AND V BECAUSE IT PROVIDED PLAINTIFF WITH A REASONABLE ACCOMMODATION, PROVIDING HER WITH AN EXTENDED LEAVE OF ABSENCE AND HEALTHCARE BENEFITS

The ADA prohibits discrimination based on an employer's failure to provide a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Unlike with typical discrimination claims, the inquiry on a failure-to-accommodate claim centers on the reasonableness of the employer's actions; the employer's motivation or intent are not relevant. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283-84 (7th Cir. 1996).

"[A]n employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th

Cir. 1997). The ADA does not require employers at every instance to provide employees "the maximum accommodation or every conceivable accommodation possible." *Id.* As Judge Jordan explained: "An employer is not required to choose any particular reasonable accommodation or to show that the employee's alternative accommodations would result in undue hardship." *Tate v. Potter*, 04-61509-CIV, 2008 WL 11400757, at *4 (S.D. Fla. Mar. 25, 2008) (Jordan, J.). And an "employee cannot dictate how the employer accommodates him." *Id.* To the contrary, "*any* reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Id.* (quotations omitted). "Thus, **where the employer has already offered a reasonable accommodation, the statutory inquiry is at an end.**" *Id.* (emphasis added); *accord Llanes v. Sears, Roebuck and Co.*, 46 F. Supp. 2d 1300, 1309–10 (S.D. Fla. 1997) ("an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is offered. . . . it is undisputed that Sears offered reasonable accommodations to Llanes and thereby discharged its duty under the ADA."), *aff'd*, 141 F.3d 1189 (11th Cir. 1998).

1. **The County Did Not Violate The ADA by Failing to Grant Plaintiff's Vague Request For A Reasonable Accommodation When Plaintiff Never Provided Medical Clearance To Return To Work Full Duty**

Ignoring her inability to work (i.e., that she was not "qualified individual) and the fact that the County had already satisfied its obligations to accommodate her through an extended leave of absence, Minus nevertheless claims that she can hold the County liable because it failed to grant her the open-ended accommodation she wanted. But even, *arguendo*, that Minus was a qualified individual, the County had no obligation to grant the accommodation she requested in February 2018. Amazingly, Minus argues that the County should have permitted her to return to work in February 2018 even though she not only lacked medical clearance to return to work but had just recently signed her sworn FRS form before a notary swearing that she was completely incapacitated from performing *any* work.

"The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). But "an employer is not required to accommodate an employee in any manner in which that employee desires." *Id.* (quoting *Stewart*, 117 F.3d at 1285). And "[a]n employer is not required by the ADA to reallocate job duties in order to change the

essential functions of a job." *Earl*, 207 F.3d at 1367 (quoting *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527 (11th Cir. 1997)).

### 2. Plaintiff's Request To Restructure The RTC Position Is Not Reasonable

In her Reasonable Accommodation Form, Minus requests that MDT restructure the RTC position but does not identify how. Def.'s S.M.F. ¶ 25. A restructuring of the RTC position in a way that would accommodate Minus' physical impairments would necessarily result in the elimination of essential RTC job functions. "An accommodation that simply eliminates rather than enables the disabled employee to perform an essential function of their job is *per se* unreasonable." *Leme v. Southern Baptist Hospital of Fla.*, 248 F. Supp. 3d 319 (M.D. Fla. 2017). Thus, Minus' accommodation request was not reasonable and therefore not actionable.

 Minus has, at a minimum, two obvious physical impairments, she uses a rollator to ambulate and dominant right arm sling. She concedes that she was unable to perform her job duties. Def.'s S.M.F. ¶ 34.  By November 7, 2017, Minus had reached maximum medical improvement.[6] By December 2017, Dr. Tannenbaum found that Minus cannot even work light duty.  As such, she is unable to move quickly from console to console and cannot react quickly during an emergency to power down the Metromover.[7] Additionally, because Minus is right handed, and her right arm is in a sling, she will have difficulty manipulating Metromover control displays and power down the Metromover electricity.  Ex. 38; Decl. of Marcos Ortega.  Thus, as ADA Coordinator Marcos Ortega determined, her physical impairments would necessarily result in the elimination of essential RTC job functions.

Undoubtedly, Minus will argue that she believes she can "get up" and move from console to console, and power down Metrorail during an emergency.  Hoping and praying that Minus can perform these essential safety sensitive tasks in an emergency where "people's lives are at stake" is not an ADA requirement.  In other words, there is "no requirement that an employer retain an employee who is likely to harm someone as a result of his disability because that would put employer on a razor's edge – in jeopardy of violating the ADA if it fired such an employee, yet in

---

[6] The date of maximum medical improvement "marks the point after which no further recovery or improvement from an injury or disease can be reasonably anticipated." *Delgado v. Omni Hotel*, 643 S.2d 1185, 1186 (Fla. 1st DCA 1994).

[7] Minus admits that an RTC must "get up" and move quickly from console to console. Minus Dep. pp. 15-16.

jeopardy of being negligent if it retained her and she hurt someone." *Palmer v. Circuit Court of Cook County, Il.*, 117 F.3d 351, 342 (7th Cir. 1997); *Stearns v. St. Anthony's Health Center*, 788 F.3d 276, 279 (7th Cir. 2015) ("we do think it is entirely proper for an employer assessing the reasonableness of a proposed accommodation to consider the sensitive nature of the employee's position and the potential safety and liability risks involved."). Finally, as to Minus' request for a reassignment to another position, the undisputed record evidence reflects that the ADA Coordinator reviewed all available DPTW vacant positions but found that Minus did not qualify for them. *Id*. ¶ 27.

### E.  SUMMARY JUDGMENT SHOULD BE GRANTED AS TO COUNTS III and VI BECAUSE PLAINTIFF CANNOT "REPACKAGE" HER ADA DISCRIMINATION CLAIMS AS A FAILURE TO ACCOMMODATE OR RETALIATION CLAIM

All six counts in the Amended Complaint are factually identical and turn on the factual predicate set forth in paragraphs 1 – 25 of the Amended Complaint, namely, that the County denied Minus' request for a reasonable accommodation and then terminated her in violation of the ADA. As such, Minus' retaliation claims set forth in Counts III and VI are improper attempts to "repackage" her ADA discrimination claim in Counts I and IV.  *Pagnakis v. Express LLC.*, 315 F. Appx 425, 431 (3d Cir. 2009) (a failure to accommodate theory "cannot be characterized as a retaliation claim under the ADA.  This claim is a direct discrimination claim based on alleged failure to fulfil the affirmative duties prescribed by the ADA."); *Garner v. School Dist. Of Philadelphia*, 63 F. Supp. 3d 483, 500 (E.D. Pa. Oct. 24, 2014) (granting summary judgment on ADA retaliation claim because "[plaintiff's] retaliation claim is based entirely upon his failure to accommodate claims, and it cannot be presented as a separate claim.").  *Accord Koty v. Zaruba,* 2017 WL 4150684 (N.D. Ill. Sept. 9, 2017) (granting summary judgment because "Courts, however, do not recognize ADA retaliation claims that are simply repackaged failure to accommodate claims) (collecting cases).  Accordingly, summary judgment should be granted as to Counts III and VI.

#### 1. Retaliation Claims Are Outside Scope Of Her EEOC Charge

In Counts III and VI, Minus alleges that the County retaliated against her because she requested a reasonable accommodation.  Yet, in her EEOC charge filed after her dismissal, Minus did not mark the box for retaliation or state that she was retaliated by Superintendent Robinson.

Instead, Minus alleges that her request for an accommodation was denied and that she was terminated in violation of the ADA. As such, Minus' retaliation claims are outside the scope of her EEOC charge. *Duble v. Fedex Package Solutions, Inc.*, 572 Fed. Appx. 889, 892-93 (11th Cir. 2014) (In ADA case, retaliatory termination claim was outside the scope of Plaintiff's EEOC Charge).

It must be noted that Minus filed her retaliation after she was terminated in March 2018 so that her retaliation claim could not have been reasonable expected to grow out of the allegation in her charge. *Fletcher v. Northlake Medical Center, LLC and HCA, Inc.,* 2005 WL 8154919, *20 (N.D. Ga. Dec. 21, 2005) ("As it is undisputed that Plaintiffs filed their EEOC charges after their respective terminations, then any activities they engaged in while employed . . . are not protected under the participation clause.").

### 2. **Minus Cannot Establish *Prima Facie Case of Retaliation***

The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA, 42 U.S.C. § 12203(a). To prevail on her ADA retaliation claim, Plaintiff must show that : (1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two. *Lucas*, 257 F.3d at 1260. The first element may be met by a request for reasonable accommodation. *See Standard v. A.B.E.L. Serv. Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998). The third element requires a showing of but-for causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar,* ___ U.S. ____, 133, S. Ct. 2517, 2533-34 (2013).

Minus' February 6, 2018 request for a reasonable accommodation is not protected because the record evidence reflects that Minus made her request for a reasonable accommodation on February 25, 2018, after she received her Disciplinary Action Report on August 9, 2017. Def.'s S.M.F. ¶¶ 22, 25. Minus knew that she would be meeting with Director Bravo on February 9, 2081, and she was on "thin ice." Thus, her eleventh-hour reasonable accommodation request is not protected activity. *See Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1270-71 (11 Cir. 2010) (We emphasize that Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination by presumptively making a discrimination complaint. The record does establish that Royal Atlantic had legitimate non-discriminatory reasons to fire Alvarez before she complained, and it remained free to action those reasons afterword.").

Additionally, DPTW designated ADA Coordinator Marcos Ortega as the individual responsible for reviewing all ADA reasonable accommodation requests. Def.'s S.M.F. ¶¶ 14, 17, 18, 25. Minus' verbal request for a reasonable accommodation to Superintendent Robinson and Chief Supervisor Walker in 2017 is not protected because Minus was advised by letter on four different occasions that she must make her ADA requests to ADA Coordinator Marco Ortega. *Madray v. Publix Supermarkets,* 208 F.3d 1300 (11th Cir. 2000) ("Publix cannot be considered to have been placed on notice of [the] harassing behavior by the plaintiff's informal complaints to individuals not designated by Publix to receive or process sexual harassment complaints."). In effect, Minus failed to participate in the ADA's interactive process by not complying with the instructions to timely direct her reasonable accommodation request to ADA Coordinator Marcos Ortega. *Holton v. First Coast Service Options, Inc.*, 9640163, (M.D. Fla. June 24, 2016) ("Thus, [plaintiff's] own actions were responsible for any breakdown in communication with her employer … and Plaintiff's failure to participate in the interactive process, as a matter of law has not shown that [defendant] failed to provide a reasonable accommodation.").

### 3. Plaintiff Was Terminated For Legitimate Non-Retaliatory Reasons

As set forth in Section C.1 above, Minus was terminated for legitimate reasons in that she violated the County's personnel rules because she was absent for over a year and was not cleared to return to work full duty by her doctors. Accordingly, the County is entitled to summary judgment as to Minus' retaliation claim.

### 4. Is Not Entitled To Compensatory Damages

Even if Minus could pursue a retaliation claim, she is not entitled to compensatory damages. The ADA expressly allows certain remedies for retaliation but the ADA is silent as to compensatory damages. 42 U.S.C. § 2000e - -5 (g). The Eleventh Circuit has not addressed whether compensatory damages are available as a remedy in ADA cases. But the Seventh Circuit in *Kramer v. Bank of Am. Sec.*, 355 F.3d 961m 965 (7th Cir. 2004) and the Ninth Circuit in *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2000) have held that the ADA does not authorize compensatory damages in ADA retaliation cases. *Accord Ajuluchuku v. S. New England Sch. Of Law*, 2006 WL 2661232 (N.D. Ga. Sept. 14, 2016). These opinions are persuasive and bar Minus from recovering compensatory damages.

## CONCLUSION

The Court should grant final summary judgment for Miami-Dade County.

        Respectfully submitted,

        ABIGAIL PRICE-WILLIAMS
        Miami-Dade County Attorney
        Stephen P. Clark Center
        111 N.W. 1st Street, Suite 2810
        Miami, Florida 33128

        By: s/ William X Candela
        William X Candela, Bar No. 759317
        Assistant County Attorney
        Email: WXC@miamidade.gov
        Phone: (305) 375-2147
        Fax: (305) 375-5634
        Attorney for Defendant

## CERTIFICATE OF SERVICE

**I hereby certify** that on September 16, 2020 a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

        s/ William X Candela
        Assistant County Attorney

## SERVICE LIST

| | |
|---|---|
| R. Martin Saenz, Esq. | William X. Candela |
| Florida Bar No. 640166 | Assistant County Attorney |
| Saenz & Anderson, PLLC | Florida Bar No. 759317 |
| 20900 NE 30th Avenue, Suite 800 | Miami-Dade County Attorney's Office |
| Aventura, FL 33180 | Stephen P. Clark Center |
| Tel: (305) 503-5131 | 111 N.W. 1st Street, Suite 2810 |
| Fax: (888) 270-5549 | Miami, FL 33128 |
| | Tel: (305) 375-5151 |
| Attorneys for Plaintiff | Fax: (305) 375-5634 |
| Served via CM/ECF | Email: wxc@miamidade.gov |
| | |
| | Attorney for Defendants |
| | No Service Made |