UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-25113-BLOOM/Louis

CHARLENA MINUS,

    Plaintiff,

v.

MIAMI-DADE COUNTY,

    Defendant.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Miami-Dade County's ("Defendant") Motion for Summary Judgment, ECF No. [36] ("Motion"). The Court has reviewed the Motion, all supporting and opposing submissions, the arguments presented at the hearing on this Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted.

**I. BACKGROUND**

Plaintiff Charlena Minus ("Plaintiff") initiated this action against Defendant alleging that she was unlawfully terminated in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760, *et seq.* Plaintiff's Amended Complaint asserts the following six counts: Count I – Discrimination in Violation of the ADA – Termination; Count II – Discrimination in Violation of the ADA – Failure to Accommodate; Count III – Retaliation in Violation of the ADA – Termination; Count IV – Discrimination in Violation of the FCRA – Termination; Count

V – Discrimination in Violation of the FCRA – Failure to Accommodate; and Count VI – Retaliation in Violation of the FCRA – Termination. *See* ECF No. [13].

On September 16, 2020, Defendant filed the instant Motion, ECF No. [36], along with its corresponding Statement of Material Facts, ECF No. [37] ("SOF"). Plaintiff submitted a Response in Opposition, ECF No. [45] ("Response"), and a Response in Opposition to the SOF, ECF No. [44] ("Response SOF"). Defendant thereafter filed a Reply, ECF No. [52] ("Reply"), with an accompanying Reply Statement of Material Facts, ECF No. [51] ("Reply SOF"). On December 10, 2020, this Court held a hearing on the Motion, during which the parties argued their respective positions. *See* ECF Nos. [55], [56], & [57]. Defendant also filed two Notices of Supplemental Authority in support of its Motion. ECF Nos. [59] & [61] ("Notices").

## II. MATERIAL FACTS

Based on the parties' briefing, together with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

The Department of Transportation and Public Works ("DTPW"), a Miami-Dade County department that operates transit services, including Metrobus, Metrorail, and Metromover, originally hired Plaintiff on July 8, 1991, as a stock clerk. ECF No. [37-4] at 3. In 2001, Plaintiff was promoted to a rail traffic controller ("RTC"). *Id.*

The RTC position is a safety-sensitive position. *Id.* at 6; ECF No. [37-7] at 2. The RTC job involves "[o]verall authority and responsibility for all train movement, rail work, equipment movement, and personnel working on mainline tracks, switches, signals and station equipment." ECF No. [37-6] at 2. At her deposition, Plaintiff explained that her duties as an RTC can involve situations where people's lives are at stake, such as emergency situations where the RTC must

respond quickly in order to de-energize power or restore power. ECF No. [37-4] at 6. The essential job functions of an RTC are the following:

>    A. Operate devices on the Central Control display panels and perform related duties from eight (8) to twelve (12) hours per day frequently sitting for an extended period of time without a break
>    B. Monitor an extended mimic board to include color-coded train movement and track indications
>    C. Repetitively align routes by depressing switch alignment buttons on Central Control display panels
>    D. Can read and speak the English language sufficiently to converse with the general public, to understand signals in the English language, to respond to official inquiries, and to make entries on reports
>    E. Lift and discharge a fire extinguisher weighing up to 10 pounds
>    F. All the above tasks will require some bending, lifting (up to 50 pounds), stretching, pulling, pushing, or climbing (entering/exiting rail cars using train foot step)
>    G. Must pass a Federal Transportation Association (FTA) Random Drug and Alcohol Test

ECF No. [37-6] at 3.

Thus, the RTC position is not a sedentary position.

On August 20, 2016, Plaintiff fell over a pipe while working and suffered injuries to her back, knees, shoulders, right arm, and head, causing her to wear a sling and walk with the help of a four-wheeled rolling walker. ECF No. [37-4] at 8, 11, 27. As a result of her injuries, Plaintiff was absent from work and on leave in accordance with the DTPW Long Term Absenteeism Policy. *See* ECF No. [37-11].

In November 2016, Plaintiff received a Skills Benefits Counseling letter, which informed her of an appointment for skills benefits counseling and instructed Plaintiff to contact the ADA Coordinator within the DTPW to request a reasonable accommodation. ECF No. [37-11]. At this November 2016 skills benefits counseling meeting, Plaintiff received a packet with information on vocational training, career counseling, and instructions on how to search for available jobs she could perform within her limitations. ECF No. [37-13]. In March 2017, Plaintiff was given a

second Skills Benefits Counseling Letter, ECF No. [37-16], and she attended a second skills benefits counseling meeting where she again received a skills benefits information packet. ECF No. [37-17].

On August 7, 2017, Plaintiff returned to work and gave Superintendent Gregory Robinson a doctor's note stating that she could "return to work as long as she adheres to the limitations and restrictions identified: sedentary." ECF No. [37-18] at 4. Plaintiff then told Superintendent Robinson that she was in pain and had to leave two hours later for a doctor's appointment. *Id.* at 2. The DTPW Medical and Records Program Manager, Michael Viera, subsequently memorialized Superintendent Robinson's concerns in the following e-mail:

> I spoke with [Superintendent Robinson] and he indicates the restrictions sedentary work and using a walker interfere with [Plaintiff's] ability to do her RTC safety-sensitive job functions. [Superintendent Robinson] is observing she was walking very slow and in pain. [He] is concerned she cannot move fast from one console to another console to respond to an emergency in time. The employee told [Superintendent Robinson] she is under pain medication for pain and that the medication makes her drowsy. Being a RTC requires to be alert/attention [sic] at all times to manage the movement of trains. DTPW is referring the employee back to Risk Management.

ECF No. [37-19] at 2. When Mr. Viera was asked if any light-duty positions were available, he indicated that there was a waiting list. ECF No. [37-20] at 2.

On August 9, 2017, Plaintiff received a Disciplinary Action Report ("DAR") stating that she had violated the County's Personnel Rules that (1) "the employee has some permanent or chronic physical or mental ailment or defect which incapacitates him from proper performance of his duties," and (2) "the employee has hindered the regular operation of the department or division because of excessive absenteeism," based on her extended absence from work and the uncertainty regarding her anticipated date of return. ECF No. [37-21] at 3.

In September 2017, Plaintiff dislocated her right shoulder during physical therapy. ECF No. [37-22] at 2. In October 2017, her physician noted that Plaintiff was "in a light duty capacity

but without her dominant right upper extremity, it would be difficult for her to do any light duty at all." *Id.* at 3. Plaintiff reached maximum medical improvement in November 2017. ECF No. [37-31] at 2. Plaintiff, however, maintains that, as of December 4, 2017, her physician indicated that she was back to her baseline and had no restrictions from a work-injury standpoint, ECF No. [44-1] at 32, which Defendant disputes based the statements in her disability benefits applications discussed below.

On February 6, 2018, Plaintiff met with the ADA Unit Coordinator, Marcos Ortega, where she completed a Reasonable Accommodation Form and requested reassignment and/or an on-the-job accommodation because she suffered from numerous impairments that affected her ability to do her job in the following ways: "Cannot reach overhead, moving fast between consoles (Metrorail, Metromover)." ECF No. [37-25]. On February 15, 2018, Mr. Ortega sent Plaintiff a letter indicating that, upon review of the medical information she provided, there would be no accommodation that DTPW could provide that would assist Plaintiff in performing her essential job functions. ECF No. [37-29]; *see also* ECF No. [37-40] at 4. Specifically, Mr. Ortega explained that Plaintiff's work restrictions and her maximum medical improvement prevented her from safely performing her job functions, and that any reasonable accommodations would require DTPW to fundamentally alter the requirements of her position. ECF No. [37-29] at 2. Because DTPW could not provide an on-the-job accommodation or an indefinite leave of absence, Mr. Ortega placed Plaintiff on a waiting list for reassignment to a vacant position, when one became available. *Id.* He also encouraged Plaintiff to apply for any other available job positions in the County, *id.* at 3, but Plaintiff never submitted any job applications for alternative positions in the County after she was injured, *see* ECF No. [37-41]. Although Mr. Ortega reviewed the DTPW roster of vacant positions at the time, he concluded that Plaintiff did not qualify for any of the

available positions because of her physical limitations, the job requirement's minimum qualifications, or because the position would constitute a promotion from her current position. ECF No. [37-28].

On December 1, 2017, Plaintiff submitted an application to the Social Security Administration ("SSA") for disability benefits in which she stated that she was unable to perform her "normal work duties which included de-energizing power if someone fell on the track (train), moving at a fast pace, switching trains to correct tracks for travel, working with field personnel changing bulbs which indicates where a train is or should be, safety sensitive functions, reach overhead." ECF No. [37-23] at 3. Plaintiff further indicated that she had restricted lifting and ambulation, she could neither stand nor sit for long periods of time, she was unable to move quickly, she used a rollator walker or cane for assistance, and she was taking medication that made her drowsy and lightheaded. *Id.* at 2, 8-9. The SSA approved Plaintiff's application for disability benefits on May 8, 2018, and found Plaintiff disabled as of August 20, 2016. ECF No. [37-24]. As such, Plaintiff was awarded lifetime monthly disability benefits of $2,440.60. ECF No. [37-36].

On March 22, 2018, Plaintiff submitted a Florida Retirement System ("FRS") in-line-of-duty disability retirement application that included a sworn statement dated February 25, 2018, that the "application is being made because of a disability, which incapacitates me for the performance of any useful work . . . ." ECF No. [37-30] at 3. Plaintiff's FRS application further affirmed that she understood that, "as a disabled retiree, [she] cannot work in any capacity and receive a disability benefit." *Id.* She also described how her injuries prevented her from performing her usual job duties, citing limitations and restrictions on lifting, ambulating, sitting, standing, and walking, and noting that she required a rollator walker for assistance and wore a sling on her right arm/shoulder. *Id.* at 2. Plaintiff further submitted two physician reports from February 2018 in

6

support of her FRS application, both of which noted that Plaintiff suffered from a "[s]evere limitation of functional capacity; permanently incapable of any kind of work; totally and permanently disabled from gainful employment." *Id.* at 7-9. On May 24, 2018, FRS approved Plaintiff's application for disability retirement benefits and awarded her lifetime monthly benefits of $6,302.11. ECF No. [37-37].

On March 13, 2018, Plaintiff was terminated for violating the Miami-Dade County Personnel Rules based on the conduct described in the DAR. ECF No. [37-26].[1] Plaintiff appealed this decision on March 16, 2018, ECF No. [37-33], and a civil service hearing was held on August 28, 2018, ECF No. [37-27]. Her appeal was later denied, ECF No. [37-38], and this denial was ultimately sustained upon review by the Mayor of Miami-Dade County, ECF No. [37-39].

Defendant now moves for summary judgment on each of Plaintiff's six claims.

## III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

---

[1] On April 23, 2018, Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she swore that she could not perform her job functions due to her injuries. ECF No. [37-34].

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, *LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by

8

its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

**IV. DISCUSSION**

In the Motion, Defendant argues that summary judgment is warranted in this case for four reasons. First, Defendant asserts that it is entitled to summary judgment on all counts because Plaintiff is estopped from arguing that she is a qualified individual under the ADA based on her representations in her SSA and FRS applications for disability benefits that she was totally disabled and unable to perform any work. Second, even assuming she is a qualified individual under the ADA, Defendant argues that it provided Plaintiff with a reasonable accommodation under the ADA. Third, Defendant maintains that it is entitled to summary judgment on the federal and Florida claims for retaliation because these claims are improper attempts to repackage Plaintiff's discrimination claims and are therefore duplicative. Finally, Defendant asserts that it is entitled to summary judgment on all counts because Plaintiff was dismissed for legitimate, non-discriminatory and non-retaliatory reasons. Plaintiff, on the other hand, takes the contrary position

on each of Defendant's arguments and argues that there are genuine issues of material fact that preclude summary judgment.

"In order to establish a prima facie case of discrimination under the ADA, a plaintiff may show that [s]he: (1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of [her] disability." *Siudock v. Volusia Cnty. Sch. Bd.*, 568 F. App'x 659, 662 (11th Cir. 2014) (citing *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007)).

Here, because the Court concludes that Defendant's first argument is dispositive—namely, that Plaintiff is estopped from arguing that she is a "qualified individual" based on her statements in her disability applications—it need not reach the remaining arguments presented by either party. The Court finds *Williams-Evans v. Advance Auto Parts*, No. 20-10746, 2021 WL 61610, at *1 (11th Cir. Jan. 7, 2021), to be particularly instructive. In finding that the summary judgment was appropriate, and that Plaintiff was judicially estopped from arguing that she was a qualified individual under the ADA, the Court of Appeals for the Eleventh Circuit explained:

> The ADA prohibits [] employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). To show she is a "qualified individual," a plaintiff must show she is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Because the ADA protects only individuals still able to perform the essential functions of their job,[2] a plaintiff who is totally disabled and unable to work

---

[2] The Eleventh Circuit has explained that

> "Essential functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform. *See* 29 C.F.R. § 1630.2(n)(2)(1). In determining what functions are deemed essential, the ADA states "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed. *See* 29 C.F.R. § 1630.2(n)(2)(ii); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997).

> cannot sue for discrimination under the ADA. *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005).
>
> A plaintiff may be estopped from asserting that she is a qualified individual under the ADA if she already applied for and received disability benefits. [*Taylor v. Food World, Inc.*, 133 F.3d 1419, 1423 (11th Cir. 1998).] Whether a plaintiff is estopped depends on the specific statements she made to the Social Security Administration. *Id.* If she made a previous sworn statement asserting that she is disabled and unable to work, the "court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim" before allowing her claim to proceed. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999).

*Id.* at *2.

The United States Supreme Court has likewise made it clear that "[a]n ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job." *Cleveland*, 526 U.S. at 806 (quoting 42 U.S.C. § 12111(8)). As such, because

> a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. . . . an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

*Id.*

Here, as in *Williams-Evans*, Defendant contends that Plaintiff is estopped from arguing that she is a qualified individual under the ADA[3] based on her contradictory statements in her SSA and FRS applications for disability benefits. In particular, Defendant points to Plaintiff's statement in her application for social security disability benefits that she was unable to perform her normal work duties as a result of her injuries and her sworn attestation in her FRS disability retirement

---

*Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

[3] Because Plaintiff's claims under the ADA and the FCRA are essentially identical and are analyzed under the same framework, the Court will address these claims together. *See Greenberg*, 498 F.3d at 1263-64; *Kurzweg v. SCP Distrib., LLC*, 424 F. App'x 840, 843 n.4 (11th Cir. 2011).

11

application indicating that her disability incapacitates her from performing any useful work. *See* ECF No. [37-23] at 3, 9 (SSA application); ECF No. [37-30] at 3 (FRS application).

In her Response, Plaintiff cites to *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 n.6 (11th Cir. 2017), and argues that "the assertions made in the applications for Social Security disability benefits do not bar Plaintiff's claims because, prior to her termination, Plaintiff was back to her baseline, had no restrictions from a work injury standpoint, and did not need future medical care." ECF No. [45] at 5. Similarly, when the issue of Plaintiff's prior inconsistent statements in her disability benefits applications was raised at the hearing on the instant Motion, Plaintiff again argued that the mere fact that she had previously applied for Social Security benefits did not disqualify her from bringing an ADA claim as a qualified individual.

Upon review, however, the Court finds that Plaintiff has failed to present any sufficient explanation for why her statements in her SSA and FRS applications do not preclude her from being a "qualified individual" for the purposes of the instant action. Initially, the Court notes that Plaintiff's reliance on dicta in a footnote in *Boyle* is entirely misplaced. This footnote states that,

> To survive summary judgment, Boyle was required to explain why his representations in his disability-retirement applications were consistent with his current allegation that he could perform the essential functions of the job in question, at least with a reasonable accommodation. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999). Because it makes no difference to the outcome of his appeal, we assume, *without deciding*, that Boyle sufficiently explained any inconsistencies between his current claims and the statements in his disability-retirement applications.

*Boyle*, 866 F.3d at 1289 n.6 (emphasis added). The Eleventh Circuit's *assumption* in *Boyle* that the plaintiff had sufficiently explained his prior inconsistent statements is inapposite to the undisputed facts here. Indeed, the Supreme Court's clear direction in *Cleveland* requires that a plaintiff bringing a suit under the ADA establish that she is a qualified individual and explain why her prior inconsistent statements in her disability benefits application does not preclude her from

12

being a qualified individual. 526 U.S. at 798. The language in the footnote from *Boyle* does not alter this requirement.

Plaintiff argues that her application for Social Security disability benefits does not, on its own, preclude her from being a qualified individual for her ADA claims. Critically, however, and as discussed below, Plaintiff fails to sufficiently reconcile her statements in her SSA application that she cannot perform her normal work duties due to her injury. Plaintiff's own statement include an inability to sit or stand for long periods of time and move at a fast pace to respond to emergencies on the tracks. *See* ECF No. [37-23] at 3. Nor does Plaintiff provide any explanation for how she can be a "qualified individual" capable of performing the essential functions of her job as an RTC, yet "incapacitate[d from] the performance of *any* useful work" as a result of her disability for the purposes of her FRS application. *See* ECF No. [37-30] at 2-3, 7, 9 (emphasis added).

Plaintiff relies almost entirely on the deposition testimony of her physician, Dr. Scott Tannenbaum, in a workers' compensation case. During the deposition, Dr. Tannenbaum attempted to recall a conversation with Plaintiff's Nurse Case Manager on December 4, 2017. In the workers' compensation deposition, Dr. Tannenbaum was asked whether, "at some point in December of 2017, [he was] asked to reach opinions about whether or not [Plaintiff's] ongoing need for treatment was due to her work related injury or to personal in nature [sic] . . . ." ECF No. [44-1] at 25. Although he did not remember the precise conversation, Dr. Tannenbaum testified as follows:

> Q. . . . [D]id you tell Ms. Mule [the Nurse Case Manager] that there was no impairment for the work injury, and that only three percent would be allocated for the degenerative changes in the spine?
> . . . .
> [A.] I don't remember the exact conversation, but I think I did—I said that based upon the fact that I really felt that, again, the soft tissue overlay was just the three percent, and that could be legitimately kind of given to what she was dealing with.

13

>       And there was, indeed, a psychogenic overlay that needed to be addressed. I don't think there was a whole lot more I could do from a physical point of view at that point.
>               . . . .
>       Q. Okay. Did you tell Ms. Mule that [Plaintiff] was back to her baseline, and that the future need for medical care of her spine was not work-related to the work injury, but due to degenerative changes that were preexisting?
>       A. I did say that.
>       Q. Okay. Did you also tell her that there are no restrictions from a work injury standpoint, *but that she has restrictions as a result of her degenerative changes of the spine*?
>       A. *I must have said that, sure*.

*Id.* at 31-32 (emphasis added).

This testimony, when read in context, fails to create a genuine issue of material fact as to whether Plaintiff was able to perform the essential functions of her job for two reasons. First, this deposition testimony was given in the context of a workers' compensation case, not the instant case. Indeed, the line of questioning recited above was specifically related to whether, from a workers' compensation standpoint, Plaintiff was entitled to authorization for additional medical treatment due to a work-related injury. Dr. Tannenbaum's testimony regarding her condition was given within that context. Moreover, that testimony does not establish that Plaintiff was able to perform her essential job functions as an RTC. In fact, Dr. Tannenbaum acknowledges in this testimony that Plaintiff still had restrictions as a result of the degenerative changes in her spine. Second, and perhaps more importantly, Dr. Tannenbaum's testimony, given in the context of whether Plaintiff had an ongoing medical need for additional treatment covered by workers' compensation, does not conflict with his written opinions in February 2018 that Plaintiff had "[s]evere limitation of functional capacity; permanently incapable of any kind of work; totally and permanently disabled from gainful employment." ECF No. [37-30] at 9. Dr. Tannenbaum's statements consistently acknowledge Plaintiff's impairment and her resulting medical restrictions. Nor does Dr. Tannenbaum's testimony contradict Plaintiff's own statements in both her SSA and

her FRS applications that she was unable to work or perform her normal job functions as a result of her disability. *See* ECF No. [37-23] at 3; ECF No. [37-30] at 2-3. Thus, even when viewed in the light most favorable to Plaintiff, Dr. Tannenbaum's opinions in his workers' compensation deposition do not present genuine issues of material fact regarding Plaintiff's ability to return to work and perform the essential functions of her job as an RTC.

In sum, as noted above, to withstand summary judgment, "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland*, 526 U.S. at 806. Upon review of the record evidence, including Dr. Tannenbaum's deposition testimony upon which Plaintiff relies, the Court concludes that Plaintiff has failed to provide a sufficient explanation for why her statements in her disability applications that she was unable to perform the normal duties of her job position is consistent with her ADA claim. *See Williams-Evans*, 2021 WL 61610, at *3 ("To survive a motion for summary judgment, Williams-Evans needed to explain why her contentions before the Social Security Administration were consistent with her ADA claim—but she failed to do so. *Cleveland*, 526 U.S. at 807. She did not explain how she could be disabled yet still able to perform the essential functions of her sales position. And that means the district court did not abuse its discretion in holding that she was estopped from asserting that she was a qualified individual under the ADA."). Because Plaintiff has failed to adequately reconcile her prior inconsistent statements in her disability benefits applications with her assertions in this case, she is estopped from arguing that she was capable of performing her essential job functions for the purposes of establishing that she is a "qualified individual" here. *See id.*; *see also Kurzweg*, 424 F. App'x at 844. Therefore, the Court concludes that Defendant is entitled to summary judgment on Counts I, II, IV, and V on this basis alone.

However, even were the Court to find that Plaintiff is a "qualified individual,"[4] it nevertheless concludes that summary judgment is warranted because there is no genuine dispute that Defendant did, in fact, provide Plaintiff with reasonable accommodations in this case.

> An employer unlawfully discriminates against a qualified individual with a disability if the employer fails to provide "reasonable accommodations" for the disability, unless providing those accommodations would impose undue hardship on the employer. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). An accommodation is "reasonable" only if it enables the employee to perform the essential functions of the job. *Id.* The ADA does not require an employer to remove another employee from a position in order to accommodate a disabled employee. *Id.* at 1256. An employer does not have to provide "the maximum accommodation or every conceivable accommodation possible." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (quotation omitted). The employee is only entitled to a reasonable accommodation, not to the accommodation of his choice. *Id.* at 1286.

*Siudock*, 568 F. App'x at 663.[5]

"Moreover, the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion

---

[4] *Cf. Siudock*, 568 F. App'x at 663 (noting that, "because Siudock was not a 'qualified individual' with a disability [based on his statements made in his social security disability application that he was unable to perform the essential functions of his job], the Board did not have to provide him accommodations" (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (holding that under the ADA, "a qualified individual with a disability" is entitled to reasonable accommodations))).

[5] The Eleventh Circuit has further explained that

> An accommodation is "reasonable" and necessary under the ADA, in turn, only if it enables the employee to perform the essential functions of the job. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259-60 (11th Cir. 2001); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) . . . . "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job." [*D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)] (quotation marks and alterations omitted). On the other hand, "the ADA may require an employer to restructure a particular job by altering or eliminating some of its *marginal* functions." *Lucas*, 257 F.3d at 1260 (emphasis added).

*Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007).

with respect to demonstrating that such an accommodation is reasonable." *Stewart*, 117 F.3d at 1286 (citing *Willis v. Conopco*, 108 F.3d 282, 283 (11th Cir. 1997)). "An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job." *Earl*, 207 F.3d at 1365. "The use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart*, 117 F.3d at 1285 (internal quotation omitted). For example, "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job." *Holbrook*, 112 F.3d at 1528. Likewise, "[r]eassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified." *Willis*, 108 F.3d at 284.

In this case, there is no dispute that Defendant held Plaintiff's position open for over a year and a half, during which time she continued to receive insurance benefits, in order to allow Plaintiff sufficient time to recover from her injury and return to work. The record evidence further demonstrates that Defendant refused to permit Plaintiff to take an indefinite leave of absence once it became clear that she had reached maximum medical improvement and that her limitations would therefore be permanent. ECF No. [37-29]. In addition, Mr. Ortega reviewed available and vacant positions within the DTPW and determined that Plaintiff did not qualify for or could not perform the requirements of those available positions. ECF No. [37-28]. Nevertheless, Mr. Ortega placed Plaintiff on a waiting list for reassignment. ECF No. [37-29]. As noted above, Defendant was not required to remove another employee from a position in order to accommodate Plaintiff, nor was it required to reassign Plaintiff where there were no vacant positions that she was qualified to perform. *See Lucas*, 257 F.3d 1256; *Willis*, 108 F.3d at 284. Moreover, Plaintiff fails to identify any vacant position that was available at the time for which she was qualified or any specific on-

the-job accommodation that would allow her to perform the essential functions of her job, despite her medical restrictions of being unable to move quickly from console to console or to sit and/or stand for extended periods of time. *See Stewart*, 117 F.3d at 1286 (citing *Willis*, 108 F.3d at 283). The Court therefore concludes that Defendant provided Plaintiff with reasonable accommodations in this case. As such, Defendant is entitled to summary judgment on Counts I, II, IV, and V.

With regard to Plaintiff's retaliation claims in Counts III and VI,

> To establish a retaliation claim under the ADA, a plaintiff must show that: 1) she engaged in statutorily protected conduct; 2) she suffered an adverse employment action; and 3) there was a causal relationship between the action and her protected expression. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). [Courts] analyze ADA retaliation claims under the same framework used for Title VII retaliation claims. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). A plaintiff must show that "a reasonable employee would have found the challenged action materially adverse," which, in the Title VII retaliation context, means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

*Williams-Evans*, 2021 WL 61610, at *3; *see also Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (explaining that "an employment action . . . is not adverse merely because the employee dislikes it or disagrees with it").

The Court finds that Defendant is entitled to summary judgment on Plaintiff's retaliation claims. As Defendant notes in its briefing—which Plaintiff notably failed to address in her Response—the retaliation claims asserted in this case are simply attempts to repackage her discrimination and failure-to-accommodate claims, which the Court has already rejected. Yet, as the Eleventh Circuit recently stated,

> Under the ADA, an allegation based on the employer's failure to fulfill affirmative duties prescribed by the ADA—such as the duty to accommodate disabilities— forms the basis of a *discrimination* claim. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002) ("the ADA says that 'discrimination' includes an employer's '*not making reasonable accommodations* to the known physical or mental limitations of an otherwise qualified'" employee) (quoting 42 U.S.C. § 12112(b)(5)(A)). In contrast, an allegation based on an employer taking actions

18

> prohibited by the ADA forms the basis of a *retaliation* claim. *See* 42 U.S.C. § 12203.

*Williams-Evans*, 2021 WL 61610, at *4.[6]

A review of Plaintiff's retaliation claims reveals that Counts III and VI simply reallege the same challenged conduct from her discrimination and failure-to-accommodate claims, asserting that Defendant's purported failure to accommodate her request for a reasonable accommodation served as the basis for her ultimate termination. As in *Williams-Evans*, however, these retaliation claims are simply Plaintiff's attempt to take a second bite at the apple on her discrimination and failure-to-accommodate claims, which, as discussed above, fail as a matter of law. *See id.*; *see also Hawthorne v. City of Prattville*, No. 2:19-cv-139-RAH, 2020 WL 5880135, at *18 (M.D. Ala. Oct. 2, 2020) (rejecting a duplicative retaliation claim founded upon an employer's insistence that a plaintiff comply with policies applicable to all employees, and noting that "[n]o reasonable worker would be dissuaded from making or supporting a charge of discrimination because an employer insisted that the worker perform the requirements inherent in the job in the first place"). As such, the Court concludes that summary judgment on Counts III and VI is warranted.

In sum, based on the Court's discussion above, summary judgment is appropriate on all counts and Defendant's Motion is therefore granted.

---

[6] *See also Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 869 (11th Cir. 2017) ("The district court did not err by granting summary judgment in favor of the County on Bagwell's retaliation claim. Bagwell did not demonstrate that she was a "qualified individual" under the ADA . . . because she failed to demonstrate the existence of a reasonable accommodation that would allow her to perform the "essential functions" of her job . . . ."); *Williams-Evans v. Advance Auto Parts, Inc.*, No. CV-118-148, 2020 WL 501752, at *6 (S.D. Ga. Jan. 30, 2020) ("the ADA considers a failure-to-accommodate claim a claim for discrimination and not retaliation." (citing *Pagonakis v. Express LLC*, 315 F. App'x 425, 431 (3rd Cir. 2009) (a failure-to-accommodate theory "cannot be characterized as a retaliation claim under the ADA. The claim is a direct discrimination claim based on alleged failures to fulfill the affirmative duties prescribed by the ADA."))); *cf. U.S. Airways, Inc.*, 535 U.S. at 396 (interpreting the ADA's discrimination provision, 42 U.S.C. § 12112(b)(5)(A), as including failures to accommodate).

Case No. 19-cv-25113-BLOOM/Louis

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion Summary Judgment, **ECF No. [36]**, is **GRANTED**.

2. Pursuant to Federal Rule of Civil Procedure 58, Final Judgment will be entered by separate order.

3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT**, any scheduled hearings are **CANCELED**, and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 7, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record